(Nos. 60670, 60773, 60777 cons.—

GARY M. GLAZEWSKI *et al.*, Appellees and Cross-Appellants, v. CORONET INSURANCE COMPANY *et al.*, Appellants and Cross-Appellees.

*Opinion filed October 3, 1985.*

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker and Steven P. Garmisa, of counsel), for appellants and cross-appellees Coronet Insurance Company and Safeway Insurance Company, and for Industrial Fire & Casualty Insurance Company and Allied American Insurance Company.

Lord, Bissell & Brook, of Chicago (Hugh C. Criffin, of counsel), and Schiff, Hardin & Waite, of Chicago

(Walter C. Greenough, of counsel), for appellant and cross-appellee American Ambassador Casualty Company.

Leo M. Bleiman, of Leo M. Bleiman, P.C., and Donald A. LeBoyer, of Chicago (David A. Novoselsky, of counsel), for appellees and cross-appellants.

Sonnenschein, Carlin, Nath & Rosenthal, of Chicago (Duane C. Quaini, Eric A. Oesterle and Elizabeth Z. LeBaron, of counsel), for Allstate Insurance Company and Liberty Mutual Insurance Company.

Robert D. Allison and Harry A. Young, Jr., of Neistein, Richman, Hauslinger & Young, Ltd., of Chicago, for Comet Casualty Company.

Brian D. Alpert, of Udoni, Connelly & Gaynes, of Chicago, for Heritage Insurance Group.

Gerald M. Rotheiser, of Stern, Rotheiser & Dupree, of Chicago, for Merit Insurance Company.

Walter C. Greenough, of Schiff, Hardin & Waite, of Chicago, for Prestige Casualty Company.

Marvin D. Berman and Mark S. Vilimek, of Kiesler & Berman, of Chicago, for Royal Insurance Company.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs brought this action in the circuit court of Cook County seeking individual and class relief against the defendants, insurance companies, for fraud and for a violation of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 311 *et seq.*) arising from the sale of underinsured-motorist coverage with limits of $15,000 per person and $30,000 per occurrence (15/30). The plaintiffs—Gary M. Glazewski, Lori A. Glazewski, Robert Sandoval, and Ella Shaw—had pur-

chased coverage in that amount from defendants Coronet Insurance Company, American Ambassador Insurance Company, and Industrial Fire and Casualty Company between January 1981 and March 1982. The plaintiffs alleged that the coverage had no value because of the way in which "underinsured" was then defined by statute. In the first two counts the plaintiffs requested compensatory damages, injunctive relief, and costs and attorney fees; they also requested punitive damages under the fraud count. The propriety of a third count, alleging a violation of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 613 *et seq.*), is not at issue here.

In the trial court the defendants who had sold the coverage to the plaintiffs moved to dismiss all three counts for failure to state a cause of action. The plaintiffs had also named as defendants a number of insurance companies from whom they had not purchased underinsured-motorist coverage. These defendants—Allied American Insurance Company, Allstate Insurance Company, Comet Casualty Company, Heritage Insurance Group, Liberty Mutual Insurance Company, Merit Insurance Company, Prestige Casualty Company, Royal Insurance Company, and Safeway Insurance Company—moved to dismiss the action for lack of standing. Without expressing the reasons for his decision, the trial judge dismissed the plaintiffs' second amended complaint with prejudice; accordingly, he did not decide the plaintiffs' separate motion for certification of plaintiff and defendant classes.

On appeal, the appellate court held that the complaint stated causes of action for fraud and deceptive trade practices against those defendants who had sold the coverage to the plaintiffs. The court also held that the plaintiffs lacked standing to bring an action against insurance companies that had not sold them the coverage. The court believed that certification of plaintiff and defend-

ant classes had properly been held in abeyance. 126 Ill. App. 3d 401.

A petition for leave to appeal (94 Ill. 2d R. 315(a)) was filed by the plaintiffs, who, in cause No. 60773, contended that the appellate court erred in holding that they did not have standing to sue the defendants from whom they had not purchased the coverage. Petitions for leave to appeal were also filed by several of the defendant insurance companies who, in cause Nos. 60670 and 60777, contended that the appellate court erred in finding that causes of action were stated under the fraud and deceptive-practices counts. We allowed the petitions and, on our own motion, consolidated the appeals for oral argument and disposition.

At the time in question, insurance companies in Illinois were required to offer underinsured-motorist coverage in addition to uninsured-motorist coverage. (See Ill. Rev. Stat., 1980 Supp., ch. 73, par. 755a—2.) Section 143a—2(3) of the Illinois Insurance Code (Ill. Rev. Stat., 1980 Supp., ch. 73, par. 755a—2(3)) defined "underinsured motor vehicle" as one "for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." That section further provided: "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." (Ill. Rev. Stat., 1980 Supp., ch. 73, par. 755a—2(3).) Effective March 1, 1980, the minimum bodily-injury coverage in

Illinois had been raised to 15/30. (Ill. Rev. Stat., 1980 Supp., ch. 95½, pars. 7—203, 7—317(b)(3).) Because the minimum limits for underinsured-motorist coverage would not exceed the minimum insurance carried by an Illinois resident, the plaintiffs argue that they could never collect on 15/30 underinsured-motorist coverage following an accident in Illinois with an Illinois resident. They also contend that the insurance would not pay in any other circumstance. Although the plaintiffs also argue before this court that if the coverage did have value, it was misrepresented, the complaint alleged only that the coverage was worthless, and we shall proceed on that basis.

A complaint may survive a motion to dismiss if the facts alleged state a cause of action (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308), and the complaint "reasonably informs the opposite party of the nature of the claim *** which he or she is called upon to meet" (Ill. Rev. Stat. 1983, ch. 110, par. 2—612(b)). To state a cause of action for fraud, a complaint "must plead sufficient acts or facts relied upon to establish the fraud" (*Hart v. Brown* (1949), 404 Ill. 498, 503), and fraud must be a necessary or probable inference from the facts alleged (*Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 948). The plaintiff must allege that the defendant made a false representation of a material fact knowing or believing it to be false and doing it for the purpose of inducing the plaintiff to act. The plaintiff must also allege his reasonable belief in and reliance on the statement to his detriment. (*Roda v. Berko* (1948), 401 Ill. 335, 339-40; *Foster v. Oberreich* (1907), 230 Ill. 525, 527; *Mother. Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72 Ill. App. 3d 37, 48.) Here, the plaintiffs alleged that the defendants, by their conduct, represented that the coverage had value. The plaintiffs also alleged that the defendants

knew that the representations were false, that the representations were made for the purpose of inducing the plaintiffs to purchase insurance, and that in reasonable reliance on the representations, the plaintiffs purchased the coverage in question. We conclude that these allegations are sufficient to state a cause of action for fraud.

A representation may be made by words, or by actions or other conduct amounting to a statement of fact. (*Racine Fuel Co. v. Rawlins* (1941), 377 Ill. 375, 380; *Leonard v. Springer* (1902), 197 Ill. 532, 538.) With respect to conduct, a person who trades in commodities represents that the trades are backed by cash or a margin account. (*United States v. Dial* (7th Cir. 1985), 757 F.2d 163, 169.) A president of a corporation who personally issues stock represents by his conduct that the stock is valid. (*Hutchings v. Tipsword* (Mo. Ct. App. 1962), 363 S.W.2d 40; see also *Stern v. National City Co.* (D. Minn. 1938), 25 F. Supp. 948, 951, 957, *aff'd* 110 F.2d 601, *rev'd on other grounds* (1941), 312 U.S. 666, 85 L. Ed. 1110, 61 S. Ct. 823.) Here, the plaintiffs allege not that they were overcharged for something that had some value, but rather that they were charged premiums for coverage that had no value. We are of the opinion that the issuance of coverage by an insurance company in return for a premium is a tacit representation to the consumer that the coverage has value. Assuming for purposes of a motion to dismiss that plaintiffs' allegations that the coverage has no value are true, we find that the insurance company defendants have made a false representation as to the value of the coverage by issuing it without disclosing that it had no value.

Because we find that plaintiffs have alleged misrepresentation by conduct, we do not address their further contention that the insurance companies owed a fiduciary or a good-faith duty to their customers to disclose that the coverage had no value.

The defendants contend that they cannot be held liable for fraud because the legislature required them to offer the coverage in question. That did not authorize them to sell it in a false and misleading manner, however. Moreover, the failure of the Director of Insurance to order discontinuance of the coverage (see Ill. Rev. Stat., 1980 Supp., ch. 73, par. 755(2)) before it was issued to plaintiffs does not preclude a common law action for fraud. Under section 143(2), no approval by the Director is required before the policy is issued, and the Director has discretion whether to review generally used riders and endorsements. Although the Director's inaction may create an inference that the policy contains no misleading clauses (see *Bernadini v. Home & Automobile Insurance Co.* (1965), 64 Ill. App. 2d 465, 467-68), it is not an explicit authorization to the insurance company to offer and sell the policy in a misleading manner.

The plaintiffs alleged in the second count of their complaint that the defendants' misrepresentations and omissions violated section 2 of the the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 312) (Uniform Act), which provides:

"A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

* * *

(9) advertises goods or services with intent not to sell them as advertised;

* * *

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

This Section does not affect unfair trade practices otherwise actionable at common law or under other statutes of this State."

The defendants argue that the Uniform Act does not

provide for awards of damages and therefore a cause of action for damages cannot be stated under that statute. Section 3 of the Uniform Act allows for injunctive relief and awards of costs and attorney fees and then says, "The relief provided in this Section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State." Ill. Rev. Stat. 1983, ch. 121½, par. 313.

This provision is susceptible to two different interpretations: first, that the Uniform Act's remedies are not exclusive and that damages are available only if the common law or statutory cause of action is pleaded in another count or proceeding (see *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266), and second, that if the allegations under the Uniform Act also support a common law or other statutory cause of action which allows recovery for damages, damages may be recovered under the Act (see *National Educational Advertising Services, Inc. v. Cass Student Advertising, Inc.* (N.D. Ill. 1977), 454 F. Supp. 71, 73). Neither the Illinois nor the National Conference comments to the Act resolve the ambiguity. (See Ill. Ann. Stat., ch. 121½, par. 311 *et seq.*, at 168, 170, 198, 199 (Smith-Hurd 1985 Supp.).) According to one commentator, the drafters deliberately omitted from the Uniform Act any relief apart from injunctions and attorney fees because it was assumed that plaintiffs generally would often be more interested in stopping the unlawful conduct than collecting damages, which may not be readily measurable, and because damages would often be too harsh or inappropriate a remedy for inadvertent wrongs. (R. Dole, *Merchant and Consumer Protection: The Uniform Deceptive Trade Practices Act*, 76 Yale L.J. 485, 497-98 (1967).) We also note that if the Uniform Act allowed damages to be recovered without a separate common law or statutory count, the courts would be in the position of having

to determine whether the allegations for the Uniform Act would support any other cause of action. The burden should be on the plaintiffs to clearly state in separate counts their grounds for recovery and not on the courts to ascertain all the different theories that a particular count can support. Therefore, we find that the allegations of violation of the Uniform Act above do not support an action for damages.

The defendants also argue that the plaintiffs may not obtain injunctive relief under the Uniform Act because they are not likely to be damaged in the future by the defendants' conduct. We agree. The plaintiffs know the problems associated with the coverage, and, armed with that knowledge, can avoid it. Thus, the plaintiffs are not persons who are "likely to be damaged" by defendants' conduct in the future. (Ill. Rev. Stat. 1981, ch. 121½, par. 313.) Therefore, we conclude that the plaintiffs have not stated a cause of action under the Uniform Act, for damages are not available under those provisions, and the plaintiffs are not eligible for injunctive relief. The defendants have not raised the question whether the Uniform Act may be used by consumers independently of an allegation of a violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*), and we do not address it.

Defendants contend throughout that *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, precludes any recovery. *Menke* is distinguishable on several grounds. First, in *Menke*, the plaintiff admitted that the coverage had value, but the plaintiffs here contend that the coverage had no value. Second, the court in *Menke* found the policy language to be unambiguous, but here the plaintiffs argue not that the language is ambiguous, but that it omits material information. Moreover, in *Menke* the court found that the value of the coverage

could be determined from the face of the policy; in this case the plaintiffs contend that because material information was omitted from the policy, the value of the coverage could not be determined.

We conclude, too, that the plaintiffs do not have standing to sue, for fraud, the defendants from whom they did not purchase the coverage in question. Standing requires some injury in fact to a legally recognized interest. (See *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 747-48.) The legally recognized interest protected by the common law of fraud is based upon actual injury in reliance on the defendant's conduct. (See *Roda v. Berko* (1948), 401 Ill. 335, 339-40.) In their fraud count the plaintiffs have not alleged any dealings with the defendants from whom they did not purchase the coverage in question and, therefore, have not alleged any actual injury in reliance on their conduct. Because we have found that the plaintiffs have not stated a cause of action under the deceptive-practices count, we need not address the question of standing under that theory.

Although the plaintiffs have moved for class certification under section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—801), their complaint must meet all cause-of-action and standing requirements before any class is certified. (*Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 47-49.) Because the trial court withheld determination of the class-certification issue, we do not speculate on the propriety of a plaintiff or a defendant class in this matter and do not address whether each named plaintiff must have a cause of action against every member of the defendant class.

For the reasons stated, we affirm that portion of the appellate court judgment holding that a cause of action for fraud has been stated against the defendants from whom the plaintiffs purchased the coverage in question,

and that the plaintiffs do not have standing to sue the defendants from whom they did not purchase that coverage. We reverse that portion of the appellate court judgment holding that the plaintiffs have stated a cause of action for violation of the Uniform Deceptive Trade Practices Act. The judgment of the circuit court of Cook County is reversed as to the dismissal of the count alleging fraud, affirmed on the dismissal of the count alleging violation of the Uniform Deceptive Trade Practices Act, and affirmed on the dismissal, for lack of standing on the fraud count, as to the defendants from whom the plaintiffs had not purchased underinsured-motorist coverage. The cause is remanded to the circuit court for further proceedings.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*