Haim ELRAD, Plaintiff,

v.

UNITED LIFE AND ACCIDENT
INSURANCE COMPANY,
Defendant.

No. 85 C 6953.

United States District Court,
N.D. Illinois, E.D.

Oct. 29, 1985.

Cheri A. Novak, Chicago, Ill., for plaintiff.

James T. Nyeste, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Dr. Haim Elrad ("Elrad") sued United Life and Accident Insurance Co. ("United"), alleging misrepresentation in connection with United's sale to him of a life insurance policy. The case was originally filed in Illinois state court, but United removed to this Court under 28 U.S.C. § 1441(b), basing jurisdiction on diversity of citizenship. Once here, United promptly moved to dismiss the case, while Elrad moved to remand the case to state court. For the following reasons, United's motion is granted and Elrad's is denied.

## Facts

The allegations of the complaint, viewed in the light most favorable to Elrad and assumed to be true, state the following. On October 12, 1981,[1] Robert Smith, acting as United's agent, sold a life insurance policy to Elrad. Smith allegedly induced Elrad to buy the policy by falsely representing that the policy was a "whole-life" rather than "term" policy, and that he could deduct from his federal income tax interest he would incur to finance a loan to pay for the policy. Relying on those misrepresentations, Elrad borrowed money from Professional Funding Corp. to pay for the premiums.

Elrad claims that the interest is not lawfully tax deductible, and that the policy is a term rather than whole-life one. He seeks recovery under three state law theories. Count I alleges a violation of Ill.Rev.Stat. ch. 73, § 761, a provision of the Illinois Insurance Code prohibiting misrepresentations as to the terms or benefits of a policy.[2] Count II rests on §§ 1–203 and 2–302 of the Uniform Commercial Code ("UCC"), Ill.Rev.Stat. ch. 26, §§ 1–203, 2–302 (1983), which respectively prescribe good faith in performing contracts subject to the UCC and proscribe unconscionable clauses in contracts governed by the UCC. Count III alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 262 (1983), and the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, ¶ 312 (1983). None of these theories can defeat United's motion to dismiss.

## The Petition for Removal

As a threshold matter, we must rule on Elrad's opposition to United's petition to remove this case from state court. Elrad does not dispute that diversity jurisdiction is proper from the face of his complaint: he is a citizen of Illinois while United is incorporated in and has its principal place of business in New Hampshire. Moreover, the amount in controversy exceeds $10,000, and United has complied with the non-jurisdictional requirements for removal set forth in 28 U.S.C. § 1446.

Elrad's argument is that the case was not "providently" removed under 28 U.S.C. § 1447(c). He points out there were related state court cases involving the same subject matter, and that judicial economy compels that the cases be tried together. In one state case, Professional Funding Corp. sued Elrad for not paying on the insurance funding agreement. Elrad counterclaimed and also brought in United and its alleged agent Smith as third-party defendants. But the state court dismissed the third-party claim against United, suggesting that Elrad refile the complaint and move to consolidate it with the first suit. Elrad refiled, but United removed the case here before Elrad could file his motion to consolidate.

At the outset, we observe that the term "provident" in § 1447(c) is not a broad invitation to this Court to decline jurisdiction simply for reasons of economy. It simply refers to basic non-jurisdictional requirements such as the posting of a bond. It is now well established that a district court cannot remand an otherwise properly removed case for discretionary or policy reasons. *See Thermitron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 343–44, 96 S.Ct. 584, 589–90, 46 L.Ed.2d 542 (1976); *Ryan v. State Bd. of Elections of State of*

---

**1.** The complaint actually alleges that the policy was issued in October 1983. However, as we discuss below at 7, it is clear that 1981 is the correct date.

**2.** That provision states in relevant part:
(1) No company doing business in this State, and no officer, director, agent, clerk or employee thereof, broker, or any other person, shall make, issue or circulate or cause or knowingly permit to be made, issued or circulated any estimate, illustration, circular, or verbal or written statement of any sort misrepresenting the terms of any policy issued or to be issued by it or any other company or the benefits or advantages promised thereby or any misleading estimate of the dividends or share of the surplus to be received thereon, or shall by the use of any name or title of any policy or class of policies misrepresent the nature thereof.

*Ill.*, 661 F.2d 1130, 1133 (7th Cir.1981). Since this case satisfies the jurisdictional and non-jurisdictional requirements of §§ 1441 and 1446, respectively, there is no basis for remanding this case.[3] Thus, the motion to remand is denied. Having so ruled, we may now turn our attention to United's attack on the complaint.

### Count I: No Private Right of Action

■ United is correct that no private right of action exists for a violation of Ill.Rev.Stat. ch. 73, § 761. Section 761(5) provides that any company who violates that section "shall be guilty of a business offense and shall be required to pay a penalty of [between $100 and $1,000], to be recovered in the name of the People of the State of Illinois by the State's Attorney of the county in which the violation occurs...." At least one Illinois court has held that in enacting this section the Illinois legislature pre-empted the remedies for violations of § 761, foreclosing a private right of action. *See Glazewski v. Allstate Ins. Co.*, 126 Ill.App.3d 401, 410–11, 81 Ill.Dec. 349, 466 N.E.2d 1151, 1157–58 (1st Dist.1984), *aff'd in part, rev'd in part on other grounds*, 108 Ill.2d 243, 91 Ill. Dec. 628, 483 N.E.2d 1263 (1985). Elrad has not attempted to distinguish *Glazewski* or otherwise address this challenge to Count I. Accordingly, we follow *Glazewski* and grant United's motion to dismiss Count I.[4]

**3.** Nor is there a basis for abstaining under any of the variations of the so-called "abstention doctrine." Elrad does not contend otherwise.

**4.** Our ruling is narrow. All we hold is that no private right of action exists under *§ 761* for violations of that section. This holding does not implicate the dispute between courts in this district, as well as between appellate courts in Illinois, as to whether *§ 767* of the Act pre-empts other remedies for an insurer's failure to pay on a claim. *See, e.g. Barr Co. v. Safeco Ins. Co. of America*, 583 F.Supp. 248, 255–56 (N.D.Ill. 1984) (Moran, J.) (detailing the dispute).

**5.** That section says:
(e) Any action for damages under this Section shall be forever barred unless com-

### Count II: UCC Does Not Apply

■ We must also reject Elrad's claim that United's alleged misrepresentations are subject to the UCC. He has cited no authority to support his novel assertion. He claims that United's conduct was unconscionable under Section 2–302 of the Code, but Article II applies only to the sale of goods. *See* Ill.Rev.Stat. ch. 26, ¶ 2–102 (1983). We disagree with Elrad's strained argument that a sale of life insurance is somehow the sale of a "good." *See* ¶ 2–105 (defining "good"). He also claims that United's conduct violated the "obligation of good faith" imposed by ¶ 1–203 of the UCC. But of course ¶ 1–203 applies only to a "contract or duty within" the UCC, and Elrad has not shown how his insurance contract is within the Code. While an insurance contract is a "commercial transaction," not all commercial transactions fall within the Code. Indeed,

[t]he ... Code does not apply to the sale of realty (except fixtures), yet these are undeniably commercial matters. The Code does not apply to the formation, performance, and enforcement of insurance contracts....

White & Summers, *Uniform Commercial Code* (2d Ed. 1980) at 6. Finding no basis for holding that the UCC can apply to Elrad's claim, we dismiss Count II.

### Count III: Statute of Limitations

■ Actions under the Consumer Fraud and Deceptive Business Practices Act contain a three-year limitation period. Ill.Rev. Stat. ch. 121½, ¶ 270a, § 10a(e) 1983).[5]

menced within 3 years after the cause of action accrued;
The substantive provision of the Act reads:
Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In

This limitation provision applies as well to Elrad's related claim under the Uniform Deceptive Trade Practices Act, Ill.Rev.Stat. ch. 121½, § 311 *et seq.* (1983). *See Chgo. Bd. Options Exchange v. Connecticut Gen'l Life Ins. Co.*, 553 F.Supp. 125, 129 (N.D.Ill.1982), *rev'd on other grounds,* 713 F.2d 254 (7th Cir.1983). Elrad bought the policy in dispute in October 1981 and filed his suit in state court well over three years later, in July 1985. United claims that the suit is therefore time-barred.

Elrad's brief response is that the limitations clock did not begin running until October 3, 1984, which is when he allegedly learned that the interest on his separate funding agreement is not tax deductible. He also claims that the finance charge was not to begin until October 12, 1984. Thus, Elrad essentially argues (1) that the so-called "discovery rule" applies to his suit under the two trade regulation acts, and (2) that he discovered the misrepresentation in October 1984. Even if the discovery rule does apply to this case, Elrad's claim was untimely.

The Seventh Circuit has applied the discovery rule to a suit under the Uniform Deceptive Trade Practices Act, although it did so without discussing or citing Illinois law. *See Chicago Bd. Options Exchange,* 713 F.2d at 261 ("CBOE"). One Illinois case did not expressly hold that the discovery rule applies to suits under the Act, but held that the plaintiff there had not sufficiently pled facts to withstand a motion to dismiss even under application of the discovery rule. *See Sommer v. United Savings Life Ins. Co.,* 128 Ill.App.3d 808, 819, 84 Ill.Dec. 77, 471 N.E.2d 606, 615 (1984). We will assume that Illinois courts would apply a "discovery rule" to suits under the Act.[6] Under such a rule, the limitations clock does not begin to tick until the plaintiff learns or in the exercise of due diligence should have learned of all the

elements of injury stemming from the allegedly deceptive acts. *See CBOE,* 713 F.2d at 261; *also, e.g., Knox College v. Celotex Corp.,* 88 Ill.2d 407, 414–17, 58 Ill.Dec. 725, 430 N.E.2d 976, 979–80 (1981). In *Knox College,* the Illinois Supreme Court explained what the phrase, "knows or should have known of the injury," means:

> This court has recently considered the discovery rule in depth in two cases, and has adopted a construction of the rule which can be termed neither narrow nor expansive. That is, we have held that the event which triggers the running of the statutory period is not the first knowledge the injured person has of his injury, and, at the other extreme, we have also held that it is not the acquisition of knowledge that one has a cause of action against another for an injury he has suffered. Rather, we have held in *Witherell v. Weimer* (1981), 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 421 N.E.2d 869 and *Nolan v. Johns-Manville Asbestos* (1981), 85 Ill.2d 161, 171, 52 Ill.Dec. 1, 421 N.E.2d 864, that the statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. In those cases it was made clear that the term "wrongfully caused" does not mean that the plaintiff must have knowledge of the defendant's negligent conduct before the statute is triggered.

>   \*     \*     \*     \*     \*     \*

> The term "wrongfully caused," as we have used that term in stating the rule must be viewed as a general or generic term, and not a term of art. This is apparent from the holdings of *Nolan* and *Witherell* that the use of the term does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action.

---

construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

Ill.Rev.Stat. ch. 121½, ¶ 262 (1983).

**6.** This is probably true, as Illinois courts apply a discovery rule under the related doctrine of fraud. *See, e.g., Knox v. Celotex Corp.,* 88 Ill.2d 407, 58 Ill.Dec. 725, 430 N.E.2d 976 (1981).

At some point, the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point under the discovery rule, the running of the limitations period commences. As we held in *Witherell* and *Nolan,* this is usually a question of fact, and as we view the facts before us, it is a question of fact in this case.

88 Ill.2d at 414–17, 58 Ill.Dec. 725, 430 N.E.2d at 979–81. Regardless of when Elrad actually knew of the alleged misrepresentation, we think there is no genuine issue of fact that more than three years have passed since Elrad reasonably should have known of his injury and should have known that it was wrongfully caused.

In reaching this conclusion we must clear up some superficial factual confusions. First, the complaint alleges that Smith sold Elrad the policy in October 1983. But United has tendered an affidavit of an employee, as well as copies of the relevant insurance forms, which show that the policy was issued in October 1981. Elrad has not rebutted this evidence, by affidavit or otherwise. Under Rule 56(e), then, we hold that no genuine issue of fact exists that Elrad's policy was first issued in October 1981.[7] Second, Elrad contends in his "Reply to Defendant's Motion to Dismiss" at 3 that the finance charge, according to a separate funding agreement, was to begin on October 12, 1984, and that he learned on October 3, 1984, that the interest was not tax deductible. Neither assertion is supported by document or affidavit. In contrast,

United counters with two notes signed by Elrad, one dated October 12, 1981, and another dated October 12, 1982, which show that regardless of when Elrad first learned or believed that the interest was not deductible, he actually began accruing interest at an 8% annual rate as early as October 12, 1981. Elrad has not rebutted this documentary evidence. Accordingly, we hold that no genuine issue exists that interest began accruing on his funding of United's policy on October 12, 1981. Indeed, his unsubstantiated assertion to the contrary in his response flirted with the sanctions of Fed.R.Civ.P. 11.

Having established this factual framework, we hold that Elrad should have learned that his interest payments were not deductible at least by April 15, 1982, the next "tax day" following his financing agreement. He gives no reason whatsoever why he failed to discover the problem by then or could not have done so in the exercise of due diligence. Accordingly, we dismiss Count III as time-barred to the extent it is based on Smith's alleged misrepresentation concerning the deductibility of interest payments. Count III is also based on an alleged misrepresentation that the policy was "whole-life" rather than "term." Elrad has made no argument or showing at all as to when he discovered this misrepresentation or why he should not have discovered it within three years before filing the suit. Thus, we also dismiss Count III as time-barred to the extent it is based on this second alleged misrepresentation.

**7.** Even though United's motion was filed under Rule 12, the standards of Rule 56 apply since we are considering matters outside of the pleadings. *See* Fed.R.Civ.P. 12(b). Rule 56(c) empowers the Court to grant summary judgment if United, the moving party, shows that no genuine issue of material fact exists. *See Cebula v. General Elec. Co.,* 614 F.Supp. 260, 263 (N.D.Ill. 1985) (Aspen, J.). We must view the evidence, as well as reasonable inferences it creates, in the light most favorable to Elrad. *Id.* If United fails to carry its burden of proof, the motion will be denied, regardless of whether Elrad utters a word in response; but if United succeeds

in showing that no genuine issue exists, the burden shifts to Elrad to create a genuine issue. He cannot rest on bare pleadings or unsubstantiated assertions in so doing. *Id.* at 263–64; Fed.R.Civ.P. 56(e). In summary judgment motions raising a statute of limitations defense, the defendant must establish specifically that (1) the limitation period has run, and (2) that no genuine issues of material fact exist as to the time plaintiff's claim accrued and as to the application of the statute to plaintiff's claim. *See, e.g., Green v. United States,* 765 F.2d 105, 107 (7th Cir.1985).

### Conclusion

For the foregoing reasons, we deny Elrad's motion to remand to state court and grant United's motion to dismiss the complaint in its entirety. In light of this ruling, we do not reach United's other challenges to the complaint, and we express no opinion on their merit.[8] It is so ordered.

---

**8.** For example, we do not address United's argument that there were no misrepresentations because the interest was actually deductible and because the policy was actually whole-life. We do not in this opinion interpret the Internal Revenue Code or construe the insurance policy.