William JOHNSON and Linda Johnson, Plaintiffs,

v.

SAFECO INSURANCE COMPANY OF AMERICA, a Washington Corporation, Defendant.

No. 92 C 20186.

United States District Court, N.D. Illinois, W.D.

Dec. 21, 1992.

Duane Donahue, Cary, Ill., for plaintiffs.

James F. Best, Fraterrigo, Best & Beranek, Wheaton, Ill., for defendant.

## ORDER

REINHARD, District Judge.

### INTRODUCTION

On May 28, 1992, plaintiffs William and Linda Johnson filed a two-count complaint in the Circuit Court of the 19th Judicial Circuit, McHenry County, Illinois, against defendant Safeco Insurance Company of America. The cause was subsequently removed to this court, defendant having invoked diversity jurisdiction pursuant to 28 U.S.C. § 1332. In Count I, plaintiffs seek a declaratory judgment that in accordance with three insurance policies defendant issued to plaintiffs, plaintiffs are entitled to recover the maximum limit under the uninsured and underinsured motorist coverage of each policy. Plaintiffs also seek a declaratory judgment in Count I that defendant is entitled to an offset equal to the amount of money actually collected by plaintiffs from unrelated insurance policies. In Count II, plaintiffs seek certification of

**604**

a class action to recover insurance premiums fraudulently charged and collected by defendant. Defendant has moved to dismiss both counts of plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6).

### FACTS [1]

██ The facts alleged in plaintiffs' complaint are as follows. On December 13, 1986, defendant sold, through its agent, two automobile insurance policies to plaintiffs. The policies were in effect from December 13, 1986 to June 13, 1987, during which time plaintiffs made full payment.

On June 10, 1987, plaintiffs' son was killed in a one-car accident in McHenry County, along with three others. A fourth was seriously injured. The automobile involved in the collision was insured by Farmers Insurance Company, and the liability limits of the insurance policy were $15,000 per person and $30,000 per occurrence. A second insurance policy, issued by Dairyland Insurance Company, applied to the driver of the car and its liability limits were $15,000 per person and $30,000 per occurrence.

On December 24, 1987, Dairyland filed an interpleader in the Circuit Court of the 19th Judicial Circuit and paid the liability limits of its policy ($30,000) to the clerk of the court. Farmers also intervened and paid the liability limits of its policy ($30,000) to the clerk of the court. Following a settlement agreement, the estate of plaintiffs' son received $12,000 representing 20% of the $60,000 in funds available from the policies issued by Dairyland and Farmers. Defendant approved plaintiffs' agreement to the settlement.

The policy defendant issued for plaintiffs' 1984 Dodge Ram Wagon (Policy 1) provided Uninsured and Underinsured Motorists coverage for bodily injury in the amount of $100,000 for each person and $300,000 for each accident. (Complaint ¶ 15.) The premium charged for this coverage was $25.40. The same insurance policy provided the same Uninsured and Underinsured Motorists coverage for plaintiffs' 1975 Chevrolet Malibu. Plaintiffs paid an additional premium of $25.40 for this coverage. Safeco also issued a second policy insuring plaintiffs' "1885 [*sic*] Subaru GL station wagon" (Policy 2), which provided the same Uninsured and Underinsured Motorists coverage as Policy 1. Plaintiffs paid a premium of $25.40 for this coverage.

### CONTENTIONS

Plaintiffs contend that they are entitled to recover for their son's death under the Uninsured and Underinsured Motorists coverage for each of the three automobiles insured by defendant on the date of the fatal accident. Plaintiffs concede that defendant is entitled to an offset of $12,000, the amount plaintiffs actually collected from the settlement agreement with Dairyland and Farmers. Defendant contends plaintiffs may recover for the death of their son under the Uninsured and Underinsured Motorist coverage for one automobile. Defendant also contends that in accordance with the language of its insurance policies issued to plaintiffs, it is entitled to an offset equal to the policy limits available to plaintiffs ($30,000) under the Dairyland and Farmers Insurance policies.

### DISCUSSION

██ When addressing a state law claim, a federal district court in Illinois is bound to follow Illinois Supreme Court interpretations. *Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1297 (7th Cir.1992). And, absent authoritative statements from the Illinois Supreme Court, the district court is bound to follow Illinois appellate court interpretations of state law unless there is good reason to think the Illinois Supreme Court would reject the appellate court's decision. *Shields*, 975

---

**1.** A complaint may be dismissed under Rule 12(b)(6) only if it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1183 (7th Cir.1989). In making this determination, a court will assume all well-pleaded allegations are true and will draw all reasonable inferences in the light most favorable to plaintiff. *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 989 (7th Cir.1991).

F.2d at 1297. Under Illinois law, the language of an insurance policy is interpreted as a matter of law. *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189, 191 (7th Cir. 1991); *Armstrong v. State Farm Mut. Auto. Ins. Co.*, 229 Ill.App.3d 971, 974–75, 172 Ill.Dec. 109, 112, 595 N.E.2d 172, 175 (2d Dist.1992).

## I. Count I

Plaintiffs, in essence, want to "stack" insurance coverage under three uninsured and underinsured motorist provisions. Defendant argues that *Menke v. County Mut. Ins. Co.*, 78 Ill.2d 420, 36 Ill.Dec. 698, 401 N.E.2d 539 (1980) is directly on point and controlling in this case. In *Menke*, the Illinois Supreme Court did not allow an insured to "stack" uninsured insurance coverage. Central to the dispute was a clause in the insurance policies which appeared under the heading "Other Automobile Insurance in the Company":

> With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the Named Insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.

*Menke*, 78 Ill.2d at 423, 36 Ill.Dec. at 700, 401 N.E.2d at 541.

The court held that the clause was not ambiguous and operated to bar stacking. *Menke*, 78 Ill.2d at 423–24, 36 Ill.Dec. at 700, 401 N.E.2d at 541. Moreover, the court refused to consider evidence of the parties' subjective intent in the face of clear and unambiguous policy language. *Menke*, 78 Ill.2d at 425–26, 36 Ill.Dec. at 701, 401 N.E.2d at 542. Finally, the court held that disallowing "stacking" was not contrary to public policy. *Menke*, 78 Ill.2d at 425–26, 36 Ill.Dec. at 701, 401 N.E.2d at 542. Even without stacking the policies, the plaintiff would recover, which satisfied the legislature's purpose of requiring insurance companies to provide uninsured motorist coverage. *Menke*, 78 Ill.2d at 425–26, 36 Ill.Dec. at 701, 401 N.E.2d at 542;

*see also Sulser v. Country Mut. Ins. Co.*, 147 Ill.2d 548, 556, 169 Ill.Dec. 254, 257, 591 N.E.2d 427, 430 (1992) (the underinsured motorists coverage legislation was designed to fill the gap between a claim and a tortfeasor's insurance, and was "not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy").

■ The clause at issue in the instant case is found in provision 4 of the "Conditions" section, and states:

**Uninsured and Underinsured Motorists Coverage:**

If this policy insures two or more automobiles or if any other automobile insurance policy issued by SAFECO applies to the same accident, the maximum limit of SAFECO's liability shall not exceed the highest limit applicable to any one automobile.

In accordance with Illinois law, this court finds the above clause is expressed in clear and unambiguous language, and is not contrary to public policy. *See Menke*, 78 Ill.2d at 425, 36 Ill.Dec. at 700–01, 401 N.E.2d at 541–42.

Plaintiffs argue the antistacking language in *Menke* is more detailed and specific than the antistacking provision found in defendant's policy. This court disagrees. In *Menke*, the antistacking provision applied to any accident covered by the plaintiff's policy "and any other automobile insurance policy issued to the [plaintiff] by the [defendant] also applies." *Menke*, 78 Ill.2d at 423, 36 Ill.Dec. at 700, 401 N.E.2d at 541. In the instant case, the antistacking provision applies if the policy in question "insures two or more automobiles or if any other automobile insurance policy issued by [defendant] applies to the same accident." The policy at issue here mirrors the antistacking language found to be valid in *Menke*. Plaintiffs attempt to read in ambiguity where none exists.

Plaintiffs also argue that the policy's $100,000 per person/$300,000 per accident, when read in conjunction with the antistacking provision, creates an ambiguity. The antistacking provision itself refutes

this argument—"the maximum limit of [defendant's] liability shall not exceed the highest limit applicable to any one automobile." Thus, the $100,000/$300,000 liability limitations, commonly used throughout the insurance industry, does not render the antistacking provision ambiguous.

Next, plaintiffs argue the location of the antistacking provision renders it ambiguous. Plaintiffs emphasize that the provision is found within the "Conditions" section of the policy, not the "Damages for Bodily Injury Caused by Uninsured and Underinsured Motor Vehicles" section, where a person would normally expect to find an antistacking provision. Plaintiffs argue that placing the provision in the "Conditions" section is misleading, because a "condition" is a requirement an insured must fulfill before receiving insurance coverage. However, a "condition" is defined as, inter alia: "something that limits or modifies the existence or character of something else: a restriction or qualification." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 473 (1986) (unabridged). The antistacking provision modifies or limits the uninsured and underinsured motorists coverage. Thus, placement of the antistacking provision in the "Conditions" section does not render the provision ambiguous. Furthermore, the provision stands alone as a separate paragraph within the condition entitled, "Two or More Automobiles" and the phrase, "Uninsured and Underinsured Motorists Coverage," beginning the provision, is highlighted in bold print.

The "Conditions" section is not the only place wherein an antistacking provision lies, as defendant points out. Within the Uninsured and Underinsured Motorists provision (Coverage G) of the policies is a section, "Limits of Liability," which states:

> Regardless of the number of (1) persons or organizations who are insureds under this policy ... or (4) automobiles or "trailers" to which this policy applies, the limit of liability for Uninsured and Underinsured Motorists coverage shown in the declarations for the vehicle involved in the accident as applicable to 'each person' is the limit of the company's liability for all damages ... sustained by one

person as the result of any one accident and ... the limit of such liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages[.] Coverage on any other 'insured automobile' shall not be added to that coverage.

\* \* \* \* \* \*

> If none of the vehicles insured in this policy is involved in the accident, Uninsured or Underinsured (as the case may be) Motorists coverage is available to the extent of coverage of any one of the 'insured automobiles.' Coverage on any other 'insured automobile' shall not be added to that coverage.

The introductory phrase, "Regardless of the number of ... automobiles ..." has been held to be critical in a finding that an insurance policy unambiguously prohibits "stacking." *See Bailey v. Auto–Owners Ins. Co.*, 229 Ill.App.3d 514, 516–18, 170 Ill.Dec. 453, 455, 592 N.E.2d 1133, 1135 (4th Dist.1992). This court agrees.

Likewise, this provision precludes plaintiffs' argument that Condition 4 does not reflect that the policy is issued to two persons. Plaintiffs argue that if Condition 4 were unambiguous, it would specify whether plaintiff William Johnson was limited to one coverage under Policy 1 and his wife, plaintiff Linda Johnson, to another coverage under Policy 1, or if they are collectively limited to one coverage. Plaintiffs advance a similar argument with respect to Policy 2. However, this court is not limited to determining whether Condition 4 clearly and unambiguously prohibits "stacking." Rather, this court must interpret whether the *policy* prohibits stacking. The above quoted provision clearly and unambiguously prohibits stacking, regardless of the number of persons insured under the policy.

■ Plaintiffs also argue an ambiguity exists in that the antistacking provision does not appear on the declarations page. Yet to require defendant to place every limitation for coverage on the declaration page would arguably result in a one-page incomprehensible insurance policy. The

declaration page states, "This page and the attachments are your complete new insurance policy." This is sufficient to notify a person that any statements made on the declarations page are modified by the provisions found within the policy as a whole. Plaintiffs' reliance on *Squire v. Economy Fire & Cas. Co.*, 69 Ill.2d 167, 13 Ill.Dec. 17, 370 N.E.2d 1044 (1977), in arguing that the declarations page of plaintiffs' insurance policy creates an ambiguity, is misplaced.

In *Squire*, the uninsured motorists provision at issue limited liability to the "amount stated in the declaration as applicable to each person." *Squire*, 69 Ill.2d at 179–80, 13 Ill.Dec. at 22, 370 N.E.2d at 1049. The Illinois Supreme Court held that the existence of two declarations pages rendered this antistacking provision ambiguous. *Squire*, 69 Ill.2d at 178–80, 13 Ill.Dec. at 22, 370 N.E.2d at 1049. Initially, the policy contained a declaration sheet, and subsequently a second declaration sheet was attached to the primary policy. *Squire*, 69 Ill.2d at 172–73, 13 Ill.Dec. at 19, 370 N.E.2d at 1046. Conversely, here there is only one declarations page per policy, with both plaintiffs' names listed on each declaration page. This is not a situation where different names appear on the declarations pages of the two policies, rendering the antistacking provision ambiguous. *See e.g., Bruder v. Country Mut. Ins. Co.*, 232 Ill.App.3d 221, 224–25, 173 Ill.Dec. 251, 254, 596 N.E.2d 875, 878 (5th Dist.), *appeal allowed*, 146 Ill.2d 623, 176 Ill.Dec. 793, 602 N.E.2d 447 (1992). Moreover, the reference to "each person" in the declarations is limited by the aforementioned phrase, "[r]egardless of the number of ... persons ... who are insureds under this policy." Such language was not present in *Squire*. In sum, when construed as a whole, the "Limits of Liability" provision within the Uninsured and Underinsured Motorists coverage section is not ambiguous.

■ Finally, plaintiffs argue that payment of identical premiums for each of the three underinsured motorist coverages renders the antistacking provisions ambiguous. However, the Illinois Supreme Court

rejected this argument. *See Menke*, 78 Ill.2d at 425–26, 36 Ill.Dec. at 701, 401 N.E.2d at 542; *see also Obenland v. Economy Fire & Cas. Co.*, 234 Ill.App.3d 99, 174 Ill.Dec. 915, 920, 599 N.E.2d 999, 1004 (1st Dist.1992). While plaintiffs may have intended triple coverage for triple premiums, "one party's subjective intent may be rebutted by 'clear and unambiguous policy language from which it can be readily seen and understood that coverage was limited.' " *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189, 193 (7th Cir.1991). Such clear and unambiguous antistacking policy language is present here.

## II. Count II

### A. *Section 155 of the Insurance Code*

In Count II, plaintiffs plead a class action to recover insurance premiums fraudulently charged and collected by defendant for worthless insurance coverage. Specifically, plaintiffs allege that the antistacking provision found in Condition 4 of each of their insurance policies deprived them of Uninsured and Underinsured Motorists coverage for which they had paid. As a consequence, plaintiffs contend defendant breached its duty to deal in good faith with plaintiffs, failed to disclose material facts to them, intentionally deceived plaintiffs and misrepresented to them, and fraudulently induced them to buy worthless insurance.

■ Plaintiffs originally filed their complaint in state court on December 27, 1991, and defendant filed a notice of removal on June 25, 1992. On July 8, 1992, plaintiffs filed a motion in state court to voluntarily dismiss Count II of their complaint. Defendant argues that based on plaintiffs' actions in state court, this court should dismiss Count II of their complaint. However, any motion presented to the state court, made after removal to a federal district court, comes too late because the state court has lost its jurisdiction. *Fox Valley AMC/Jeep, Inc. v. AM Credit Corp.*, 836 F.2d 366, 367 (7th Cir.1988). Thus, plaintiffs' attempt to voluntarily dismiss Count II of their complaint is without effect.

Defendant also asserts that Count II of the complaint is preempted by the Illinois Insurance Code, ILL.REV.STAT. ch. 73, para. 767 (1992).[2] According to defendant, section 155 of the Insurance Code preempts any common law action for bad faith or fraud. Plaintiffs argue, however, that the preemptive effect of section 155 is irrelevant in the instant case because the provision is inapplicable. According to plaintiffs, section 155 applies only when an insurance company's delay in settling a claim is vexatious and unreasonable, and they are not contending that defendant has engaged in vexatious and unreasonable conduct.

What constitutes a vexatious and unreasonable delay is a question of law for the court. *Richardson v. Illinois Power Co.*, 217 Ill.App.3d 708, 711–12, 160 Ill. Dec. 498, 501, 577 N.E.2d 823, 826 (5th Dist.1991). This court agrees with plaintiffs that section 155 of the Insurance Code is inapplicable here. In enacting section 155, "[t]he legislature intended to provide a remedy to an insured who encounters unnecessary difficulties when an insurer withholds policy benefits." *Richardson v. Illinois Power Co.*, 217 Ill.App.3d 708, 711, 160 Ill.Dec. 498, 501, 577 N.E.2d 823, 826 (5th Dist.1991). "An honest dispute as to the existence of a legal obligation will not result in unreasonable and vexatious delays[,]" rendering section 155 inapplicable. *Boyd v. United Farm Mut. Reins. Co.*, 231 Ill.App.3d 992, 1000–01, 173 Ill.Dec. 465, 471, 596 N.E.2d 1344, 1350 (5th Dist.1992). Thus, if plaintiffs have predicated Count II on conduct other than that covered by section 155, their claim is not preempted. *Mayoff v. Hartford Life and Accident Ins. Co.*, No. 90 C 0571, 1990 WL 141422, at *5–

6 (N.D.Ill. Sept. 21, 1990). Assuming as true the allegations of Count II, plaintiffs aver defendant fraudulently induced plaintiffs to pay additional premiums for worthless coverage. Plaintiffs do not allege that defendant has acted vexatiously or unreasonably in refusing to admit liability. In fact, as this court's disposition of Count I reflects, defendant has a legitimate defense with regard to the "stacking" issue.

Defendant cites to *Mazur v. Hunt*, 227 Ill.App.3d 785, 169 Ill.Dec. 848, 592 N.E.2d 335 (5th Dist.1992) in arguing that section 155 preempts Count II. However, *Mazur* is inapposite to this case. In *Mazur*, the insured alleged that the insurer fraudulently obtained a signed proof of loss from the insured, then used that form to deny payment on two pieces of jewelry the insured said had been stolen. The court held that the insured's common law cause of action for fraud was preempted by section 155. *Mazur*, 227 Ill.App.3d at 239–40, 169 Ill. Dec. at 851, 592 N.E.2d at 338.

Here, however, defendant had good reason to contest the validity of Count I, and there are no allegations that defendant engaged in vexatious and unreasonable action in refusing to stack its insurance policies. Rather, plaintiffs admit that given the conflicting case law, defendant had good reason to contest payment to plaintiffs. Defendant emphasizes that portion of the complaint wherein plaintiffs allege defendant fraudulently misrepresented the value of the Uninsured and Underinsured Motorists coverage, in arguing that section 155 applies here. (*See* Complaint ¶¶ 20–25). However, those allegations stem from defendant's allegedly wrongful conduct in procuring the extra premiums, and are not allegations that defendant's failure to pay

---

**2.** Section 155 states, inter alia:
(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
(b) $25,000;
(c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
ILL.REV.STAT. ch. 73, para. 767 (1992).

is unreasonable and vexatious. Therefore, section 155 is inapplicable here. *See, e.g., West Food Stores, Inc. v. Hartford Fire Ins. Co.,* 417 F.2d 1219, 1222 (7th Cir.1969) (court refused to award attorney's fees pursuant to ¶ 767 because insurance company's refusal to pay was not vexatious nor without reasonable cause); *Martz v. Union Labor Life Ins. Co.,* 573 F.Supp. 580, 586 (N.D.Ill.1983) (insurer, who defended on the basis of a reasonable legal position on an unsettled issue, was not vexatious or unreasonable in its decision to contest the plaintiff's claim), *rev'd on unrelated grounds,* 757 F.2d 135 (7th Cir.1985); *Cummings Foods, Inc. v. Great Cent. Ins. Co.,* 108 Ill.App.3d 250, 257–58, 64 Ill.Dec. 108, 114, 439 N.E.2d 37, 43 (4th Dist.1982) (an insurance company's assertion of a legitimate policy defense, supported by case law, is not unreasonable or vexatious). In *Mazur,* the plaintiff's fraud count contained allegations that the defendant's failure to pay was unreasonable and vexatious, which the court held were sufficient to warrant application of section 155. *Mazur,* 227 Ill.App.3d at 791–93, 169 Ill.Dec. at 853, 592 N.E.2d at 340.[3] Unlike in *Mazur,* here there are no such allegations, and this court finds that plaintiffs have not alleged that defendant's decision to contest plaintiffs' claim was vexatious or unreasonable.

### B. *Common Law Fraud*

 However, Count II fails for another reason. Plaintiffs have failed to allege a common law cause of action for fraud. In so holding, this court is unpersuaded by plaintiffs' reliance on *Glazewski v. Coronet Ins. Co.,* 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263 (1985). In *Glazewski,* the Illinois Supreme Court upheld the insureds' fraud count, wherein the insureds alleged their underinsured motorists coverage had no value because of the manner in which "underinsured" was defined by statute. *Glazewski,* 108 Ill.2d at 247–49, 91 Ill.Dec. at 630, 483 N.E.2d at 1265. It is true, as plaintiffs argue, that the allegations in

their complaint mirror those the court in *Glazewski* found were sufficient to state a common law fraud claim. Yet, the court in *Glazewski* rested its holding on a finding that the plaintiffs' coverage was valueless. *Glazewski,* 108 Ill.2d at 249–51, 91 Ill.Dec. at 631, 483 N.E.2d at 1266. The court was of the opinion that selling insurance in return for a premium is a "tacit representation to the consumer that the coverage has value." *Glazewski,* 108 Ill.2d at 250, 91 Ill.Dec. at 631, 483 N.E.2d at 1266. The court concluded that in issuing its coverage without disclosing that it had no value, the insurance company made a false representation. *Glazewski,* 108 Ill.2d at 249–51, 91 Ill.Dec. at 631, 483 N.E.2d at 1266.

However, Illinois courts have traditionally been unwilling to find that an antistacking provision in an insurance policy renders multiple policies valueless. *See Menke,* 78 Ill.2d at 425–26, 36 Ill.Dec. at 701, 401 N.E.2d at 542 (multiple policies resulted in additional coverage for passengers not members of his household); *Carini v. Allstate Ins. Co.,* 113 Ill.App.3d 202, 68 Ill. Dec. 824, 826, 446 N.E.2d 1221, 1223 (1st Dist.1983) (court has recognized that the "increased risk to the insurer which results when multiple cars are on the road may justify charging additional premiums"). As for plaintiffs' argument that a factual issue exists as to the value of defendant's coverage, this court finds *Carini v. Allstate Ins. Co.,* 113 Ill.App.3d 202, 204–06, 68 Ill.Dec. 824, 826, 446 N.E.2d 1221, 1223 (1st Dist.1983), to be controlling under the allegations in the complaint.

Moreover, a careful reading of Count II of the complaint reveals that plaintiffs' allegations of fraud stem only from defendant's conduct in selling multiple policies of insurance with antistacking provisions. Plaintiffs do not allege the existence of promises for additional coverage apart from the mere issuance of multiple policies with antistacking provisions. Because Illinois courts have held that antistacking provisions do not render coverage from multi-

---

**3.** Although *Mazur,* as defendant argues, can be read more broadly that every common law fraud claim is preempted by section 155, this

court need not do so as the allegations of fraud in *Mazur* contain the unreasonable and vexatious language.

**610**

ple policies valueless, this court finds that plaintiff has failed to allege a common law action for fraud. In light of the disposition of Count II, this court need not address defendant's remaining contentions.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. Plaintiffs' complaint is dismissed. This cause is hereby dismissed in its entirety.