HANOVER INSURANCE COMPANY, Plaintiff-Appellant, *v.* GEORGE
CORMACK, Defendant-Appellee.

First District (3rd Division)   No. 77-1674

Opinion filed May 23, 1979.—Rehearing denied November 26, 1979.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Hamilton, and Stephen R. Swofford, of counsel), for appellant.

Garbutt, Jacobson and Lee Associated, of Chicago (Jerome J. Jacobson, of counsel), for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Hanover Insurance Company (Hanover), sought a judgment declaring that its liability for injuries caused by an uninsured motorist is limited to a maximum amount of $20,000 per accident under an insurance policy issued to the defendant, George Cormack. Cormack's son, who was covered under the policy, was killed while a passenger in an uninsured auto. Cormack contends that he is entitled to "stack" the uninsured motorist benefits due upon his son's death and receive a separate $20,000 for each of the three cars he insures under the policy, for a recovery of $60,000 per accident. On cross motions for summary judgment the trial court ruled that Cormack was entitled to three separate recoveries of $20,000 under the policy, less a proportionate amount reflecting a discounted premium paid for two of the cars. Hanover appeals this decision, asserting that the court misinterpreted the coverage of the policy's uninsured motorist protection. Cormack requests a modification of the decision, contending that it was error to allow a proportionate reduction of the cumulative recovery.

The policy in question provides Cormack with several types of insurance coverage: liability, accidental death, towing and uninsured motorist protection. The single declaration page of the policy lists the three cars and the premiums Cormack paid for each: $64 per month for the first car, $52 per month for the second car and $52 per month for the

third car. Written after a description of each car, under the heading "Uninsured Motorist—each accident," is $20,000.

A section of the policy labeled "Limits of Liability" states:

"Regardless of the number of * * * automobiles * * * to which this policy applies * * *

(C) the limit for Uninsured Motorist Coverage stated in the declarations as applicable to each accident is the total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as a result of one accident."

The separability clause, under the heading "Other Automobile Insurance in the Company," states:

"With respect to any occurrence, accident, death or loss to which this or any other automobile insurance policy issued to the named insured by the company also applies, the total limit of the company's liability under all such policies shall not exceed the highest applicable limit of the liability or benefit amount under any one such policy.

When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, * * *."

Under the policy, uninsured motorist protection extends to Cormack, relatives living in Cormack's household and any persons who are injured by uninsured motorists while driving or riding in the insured cars with Cormack's permission.

James Richardson, an actuary for Hanover, gave an evidence deposition which was made part of Hanover's motion for summary judgment. Richardson explained that the variance in premiums paid by Cormack for each car reflected a discount which the company gave when a single owner insured more than one car with it, even if the cars were covered under three separate policies, instead of a single policy, as in this case. According to Richardson the discount takes into account a variety of factors, including the uninsured motorist risk. $1.65 of the $64 premium paid for the first car went toward uninsured motorist coverage; only $1.35 out of each $52 premium paid went toward the uninsured motorist coverage for the second and third cars. The premium on the first car, Richardson said, covered the gamut of uninsured motorist risks, providing protection to Cormack and his relatives if they were injured by an uninsured motorist while riding in the first car, if they were injured while pedestrians, and if they were injured while occupants of a car not covered by the policy. The premium also paid for protection to any passengers in the first car who were injured by an uninsured motorist. Richardson said the smaller premium paid for the second and third cars indicated, in part, a lesser uninsured motorist risk experienced by Hanover in regard to the second and third cars. It paid for only those risks

not covered under the first car's protection: injuries suffered while the insureds were riding in the second and third cars and injuries suffered by any passengers while riding in the second and third cars.

■■ ■ Whether Cormack is entitled to "stack" the $20,000 allotted as the per accident uninsured motorist recovery for each of the three cars covered under the policy entails an examination of the language of the insurance policy and the circumstances surrounding its issuance to determine what the parties reasonably contemplated when they entered into the contract. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 175, 370 N.E.2d 1044, 1047.) An insurance contract can limit a company's liability for accidents involving an uninsured motorist so long as the limitation complies with section 143a of the Illinois Insurance Code. (Ill. Rev. Stat. 1977, ch. 73, par. 755a; see *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247; *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97; *Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 386 N.E.2d 36.) Section 143a requires that every auto insurance policy compensate an insured in the event of injury by an uninsured motorist to the same extent the insured would have been compensated if the motorist had coverage in compliance with the financial responsibility law. The financial responsibility law requires that a motorist carry insurance providing a minimum $10,000 recovery to any one person injured in an accident, up to a maximum $20,000 recovery per accident. Ill. Rev. Stat. 1977, ch. 95½, par. 7—203.

■■ ■ The limitation clause of the policy in this case restricts uninsured motorist benefits "regardless of the number of automobiles to which the policy applies" to the recovery permitted "as a result of any one accident." The declaration page in the policy lists a recovery limit of $20,000 per accident. We believe such language conveys the intent of the parties to confine the recovery under the policy for any one incident involving an uninsured motorist and any one of the cars and any of the people insured under the policy to $20,000. Since that is within the protections mandated by the uninsured motorist act and since the wording of the limits of liability clause clearly means such a restriction, we find that under this policy, Cormack cannot stack recoveries.

This holding is based in part on the supreme court decision in *Squire.* There, it was argued that the absence of the phrase "regardless of the number of insured automobiles to which this insurance applies" created an ambiguity in a limitation's clause similar to the one in question in this case, permitting that limitation's clause to be interpreted to intend stacking of the uninsured motorist benefits. (*Squire*, 69 Ill. 2d 167, 173, 370

N.E.2d 1044, 1046.) The supreme court opinion accepting that argument would seem to infer the reverse: the presence of the phrase "regardless of the number of cars insured under the policy" in a clause limiting uninsured motorist benefits to a single accident recovery rate means that the stacking of three separate coverages per car was not intended by the parties.

Cormack makes three arguments against this interpretation. First, he argues that precedent makes stacking and an expansive interpretation of uninsured motorist coverage the law in Illinois. Second, he asserts that the separability clause of the contract when read in conjunction with the limits-of-liability clause and the declaration page presents an ambiguity which must be resolved in his favor to permit stacking. Third, he contends that since he paid three separate premiums, one for each car, he paid for three separate uninsured motorist benefits of $20,000 or a cumulative amount of $60,000 per accident.

If any one rule has emerged from the cases considering the question, it is that aggregation of uninsured motorist benefits is neither approved nor disapproved, but in each case its propriety depends upon an analysis of the particular insurance contract and the factual circumstances of its issuance. (See, *e.g., Putnam; Stryker; Glidden; Squire.*) Thus, the supreme court has denied the right to aggregate benefits when the contract language clearly indicates a limitation of recovery (*Putnam*), but when duplicative uninsured motorist benefits were contracted for, stacking was permitted. *Glidden.*

Cormack contends that *Glidden* should control this case because the facts in *Glidden* are identical to those in the case at bar. In *Glidden* the court found stacking was intended when the owner of three cars, insured under three separate policies with the same company, paid a separate premium for each car. Cormack describes the policy in this case and the policy in *Glidden* as "essentially the same," suggesting that the only difference is that *Glidden* concerned three separate policies and this case concerns only one.

Our analysis of *Glidden* indicates a greater disparity between the cases. The primary issue in *Glidden* was whether the "other insurance" clause in the policy prohibited stacking by limiting recovery to a per accident maximum and prorating the amount among the three policies. The supreme court found that the other insurance clause was not meant to prorate recovery when the policies were issued by the same company, especially in light of the separate premium payments by *Glidden.* At issue in this case, however, is not the meaning or intent of an "other insurance" clause but the effectiveness of an express limit of liability clause. The

*Glidden* court did not consider the significance of such a clause and under that circumstance *Glidden* cannot control this result.

Cormack next complains that there are ambiguities in his insurance policy. First, he suggests that the limits-of-liability clause is patently ambiguous because it is hidden within the policy and written to confuse the reader. He notes that the clause is on the third page of the policy, contains numerous paragraphs, deals with the limits of liability on all the coverages of the policy, not merely the uninsured motorist coverage, and fails to mention the actual uninsured motorist limit but refers the reader to the declaration page.

The declaration page of the Cormack policy is individualized to reflect the particular coverage Cormack purchased: certain things are typed in to "customize" the policy to the coverage Cormack paid for. The rest of the Cormack policy is a preprinted standard policy form. Cormack's objections are really directed at the form of the policy. Although in some circumstances the excessive use of standardization can create ambiguities, we do not believe the law demands the explicit personalization of each policy, which Cormack's argument necessitates, before it will find a clause is not ambiguous. Since the policy was meant to deal with a number of different coverages, not only the uninsured motorist, under a variety of circumstances, it was not illogical to label a clause "Limits of Liability" and include in it the restrictions on the company's liability on all coverages.

Second, Cormack contends that the separability clause in the policy renders the limitations on the declaration page equivocal. The separability clause states that if more than one auto is insured under the policy, the terms of the policy apply separately to each. Cormack argues that a reasonable reading of that clause would treat each auto as if it were covered by a separate policy, making three separate policies, each with a $20,000 uninsured motorist recovery.

■ The purpose of a separability clause is to "render the policy applicable to whichever of the insured cars is involved in the accident." (*Otto v. Allstate Insurance Co.* (1971), 2 Ill. App. 3d 58, 275 N.E.2d 766; *Allstate Insurance Co. v. Mole* (5th Cir. 1969), 414 F.2d 204, 205.) This purpose is not necessarily at odds with the intent of the limits-of-liability clause or the statement on the declaration page: the limits-of-liability clause still can be read as applying to each of the cars and the amounts on the declaration page clearly state a "per accident" not a "per car" recovery.

Further, the separability clause is part of a larger paragraph which states that Hanover's liability under all the policies it issued to Cormack "shall not exceed the highest applicable limit of liability or benefit amount

under any one such policy." Thus, even if we were to find that Cormack had three separate policies, this clause iterates the intent of the parties to limit the uninsured motorist liability to $20,000 per accident and it corrects any indication which may have been generated by the separability clause that the liability limit should be increased because three cars are involved in the contract. See *Winkler v. State Farm Mutual Automobile Insurance Co.* (1976), 35 Ill. App. 3d 493, 341 N.E.2d 379.

Finally, Cormack argues that since he paid three separate premiums under the policy he is entitled to three recoveries or $60,000. He states that the central theme of *Glidden* is "if a single insurer charges its insured separate premiums when the insurer insures multiple vehicles there is a duplication of premium," and thus, according to Cormack, an intent to purchase increased benefits. Cormack states that to deny stacking is to make him pay a premium for no coverage at all. Citing *Squire*, he asserts that an insurer cannot collect a premium for coverage and then take the coverage away by a limiting clause no matter how clear that clause may be.

The Illinois Supreme Court has rejected a *per se* premium rule in cases involving uninsured motorist protection. In *Stryker*, 74 Ill. 2d 507, 513, 386 N.E.2d 36, 38, it was held that merely having paid a premium for uninsured motorist coverage is not enough to mandate aggregation of benefits:

> "[L]ike all others, [an insurance policy] is a contract between the company and the policyholder, the benefits of which are determined by the terms of the policy purchased insofar as those terms are not contrary to public policy."

The issue is not merely was a premium paid but what did the parties understand the premium to pay for.

In this case, Hanover claims that the premiums Cormack paid on the second and third cars cover additional risks and are not intended to purchase a second and third $20,000 of uninsured motorist benefits. Under the terms of the Hanover policy all persons riding in insured autos are afforded uninsured motorist protection. Therefore, when multiple cars are on the road, all filled with passengers, Hanover's risk is greatly increased. The testimony of the actuary, Richardson, confirms that the insurance rate was set to include such a factor: the higher rate on the first car provides personal protection for all insureds under the policy, no matter where they are when they are injured by an uninsured motorist; it also provides protection for the passengers who, while in the first car, are injured by an uninsured motorist. The lower rates charged on the second and third cars include only the risk of injury to the insured or passengers in the second and third cars, and the latter protection is not normally included under the first car's premium.

Cormack relies on *Glidden* and *Squire* to disprove Hanover's actuarial argument, but again such reliance is misplaced. The evidence in *Glidden* and *Squire* which proved the premiums paid for duplicative coverage is not present here. In *Glidden* the insurance company agreed that each of the three separate premiums paid for three separate and identical uninsured motorist benefits. (See *Glidden v. Farmers Automobile Insurance Association* (1973), 11 Ill. App. 3d 81, 296 N.E.2d 84 (dissenting opinion), *aff'd in part, rev'd in part* (1974), 57 Ill. 2d 330, 312 N.E.2d 247.) In this case, Hanover has not admitted that the three premiums paid for the identical coverage and no extrinsic evidence has been introduced to show that Cormack was told that he purchased expanded coverage.

In *Squire* the contract had two declaration pages covering two cars. For the first car, the plaintiff paid a premium of $4 for uninsured motorist coverage; for the second car she paid $1 premium. The insurance company argued that the $1 paid for an additional risk which the company assumed when the second car was included under the policy: that the insured might be injured by an uninsured motorist while in the second car. The supreme court rejected this argument, holding that the risk was already covered, by law, under the first car's policy. Thus, even if the second car was not insured under the policy, and the plaintiff was injured by an uninsured motorist, the plaintiff could recover damages. But the risk Hanover suggests is covered by the second and third car premiums significantly differs from this.

■ Our analysis shows that the language in the policy limiting the recovery to $20,000 per accident does not violate the purpose of the Uninsured Motorist Act and the premiums paid by Cormack for the second and third cars did not demonstrate that the parties intended coverage over that limit. We find that Cormack did not purchase uninsured motorist benefits above the $20,000 per accident recovery. Because of our disposition of this issue, we do not have to consider the issue raised by Cormack's appeal. The judgment of the trial court is reversed and the case is remanded to the circuit court for the entry of summary judgment in Hanover's favor.

Reversed and remanded.

SIMON, P. J., and McNAMARA, J., concur.