BRIAN BAILEY, Plaintiff-Appellant, v. AUTO-OWNERS INSURANCE COMPANY, Defendant-Appellee.

Fourth District   No. 4—91—0888

Opinion filed April 30, 1992.

Richard B. Opsahl, of Rantoul, for appellant.

Gary D. Nelson and Karen L. Kendall, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Brian Bailey initiated an action for declaratory judgment in the circuit court of Champaign County to determine whether he is entitled to aggregate the limits of coverage from two auto insurance policies issued by the same insurer. Defendant's motion for summary judgment was granted, and this appeal follows.

Plaintiff contends that (1) the clause limiting the "stacking" of uninsured motorist coverage is ambiguous and should be construed in favor of the insured; and (2) the fact that plaintiff paid two separate premiums for uninsured motorist coverage indicates that the intent of the parties is unclear and the court should favor an interpretation that plaintiff had purchased additional indemnification through the second premium.

Plaintiff holds an automobile insurance policy on a 1984 Buick Riviera that provides uninsured motorist coverage of $50,000. He holds an identical policy from the same company on a second car. Both policies include an itemized charge of $9.13 for the uninsured motorist coverage. Plaintiff was operating a nonowned, uninsured vehicle when he was struck by an uninsured motorist. Plaintiff claims that because the vehicle he was operating was not one of the vehicles insured by defendant, defendant is thereby bound by the uninsured motorist provisions of the policy to pay the limit of liability expressed in each of the declarations of coverage, for a total of $100,000. Defendant claims that the policy clearly and unambiguously precludes the "stacking" of uninsured motorist coverage and, therefore, limits its liability to $50,000, the coverage limit on each of the auto policies.

The threshold inquiry is whether the "limits of liability" clause is clear and unambiguous. If the clause is ambiguous, the policy must be construed in favor of the insured. If it is unambiguous, there is no need for construction and the clause may be applied as written, unless it contravenes public policy. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423, 401 N.E.2d 539, 541.) Defendant relies on policy language in the first two paragraphs of the section titled "Conditions," where it states:

> "1. APPLICATION OF LIMITS OF LIABILITY. Regardless of the number of *** (4) automobiles to which this policy applies, the Company's liability shall be limited as provided in Condition 2.
>
> 2. LIMITS OF LIABILITY. The limit of liability expressed in the Declarations with respect to Coverages A and D as applicable to 'each person' is the limit of the Company's liability for all damages, including damages for expenses, care and loss of services, arising out of bodily injury to one person in any one occurrence ***."

("Coverage D" is the provision for uninsured motorist coverage.)

In *Menke*, the supreme court held that a similar limitation on coverage stacking was permissible, as long as it was stated unambiguously. There, the plaintiff held three separate policies from Country

Mutual Insurance Company for his three vehicles. Each policy had a limit of $10,000 for uninsured motorist coverage, and the plaintiff paid a separate premium for the coverage on each policy. Like the present case, the insured was injured while riding in an uninsured vehicle. The plaintiff claimed he was entitled to aggregate the uninsured motorist coverage, for a total recovery of $30,000, while the defendant insurer claimed its liability was limited to the $10,000 coverage on each policy. After reviewing the policy provisions limiting liability, the court concluded that the policy was not ambiguous and clearly precluded the "stacking" of coverage among the three policies. The actual clause limiting liability in the *Menke* case reads:

> " 'With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the Named Insured by the Company also applies, the total limit of the Company's liability under all such policies shall not exceed the highest applicable limit of liability or benefit amount under any one such policy.' " *Menke*, 78 Ill. 2d at 423, 401 N.E.2d at 541.

In a similar case, *Hanover Insurance Co. v. Cormack* (1979), 78 Ill. App. 3d 368, 396 N.E.2d 1076, plaintiff's son was killed while a passenger in an uninsured auto. Plaintiff claimed he was entitled to "stack" the uninsured motorist coverage and demanded a separate $20,000 for each of the three autos he insured under the policy. Relying solely on the "Limits of Liability" clause, the court found the provision unambiguous and held that plaintiff would not be allowed to "stack" the coverages. The language used in that case is nearly identical with the language limiting liability in the case at hand. The provision in *Hanover* reads:

> " 'Regardless of the number of *** automobiles *** to which this policy applies ***
>
> (C) the limit for Uninsured Motorist Coverage stated in the declarations as applicable to each accident is the total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as a result of one accident.' "
> (*Hanover*, 78 Ill. App. 3d at 370, 396 N.E.2d at 1077.)

The only difference between the provision in *Hanover* and the provision in the present case is that it was written for each "accident" instead of each "person," a fact that does not alter our analysis. The *Hanover* court emphasized the introductory phrase, " 'Regardless of the number of *** automobiles *** to which this policy applies,' " as the critical element in its holding that the language prohibiting "stacking" was unambiguous and conveyed the clear intent of the

parties. This critical phrase is repeated verbatim in the clause limiting liability in the case at hand.

■ Plaintiff relies on *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 370 N.E.2d 1044, where the court held that language limiting "stacking" of coverage in an uninsured motorist provision was ambiguous and, therefore, allowed plaintiff to aggregate the coverage. However, as the *Hanover* decision points out, the contract language in *Squire* lacked the key phrase, " 'Regardless of the number of *** automobiles *** to which this policy applies,' " and is therefore distinguishable. *Hanover* suggests that since the decision in *Squire* was based on the lack of clear policy language precluding "stacking," the presence of such language clearly distinguishes the two cases. We find that the provisions prohibiting the "stacking" of policy coverages in the instant case are substantially identical with the provisions in both *Menke* and *Hanover*. The provision is likewise both clear and unambiguous in its prohibition of "stacking" coverages.

Plaintiff next contends that since separate premiums of $9.13 for uninsured motorist coverage were paid, the intention of the parties is unclear and the court should favor an interpretation that the insured was paying for additional coverage. Plaintiff's reliance on the *Squire* case for the notion that the existence of two premiums creates a fundamental ambiguity is misplaced. As that court stated, "[H]ad the insurance company intended the additional [premium] to provide anything other than" additional indemnification "it should have so stated." (*Squire*, 69 Ill. 2d at 179, 370 N.E.2d at 1049.) In the present case, defendant did state the limits of coverage.

■ The notion that separate premiums necessarily indicates separate coverage is often referred to as the "premium rule," and is based on the concept that insurance companies should not be permitted to collect premiums for a given amount of coverage and thereafter apply limiting clauses to reduce or absolve their liability to the insured.

> "[T]he 'Premium Rule' is best understood as a mere explication of the general rule that the insured is to be favored in construing insurance policies. Consequently, the 'Premium Rule' should be viewed as a rule of construction, and should not be applied unless the insurance contract reveals an ambiguity as to the amount of coverage intended." (*Greenholt v. Inland National Insurance Co.* (1980), 87 Ill. App. 3d 638, 641, 410 N.E.2d 150, 152-53.)

We find no ambiguity in the language describing the limitations of coverage, and therefore no need to apply the "premium rule."

■ Next, plaintiff asks that we adopt the holding in *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247, where the court looked beyond the clear language of the policy precluding "stacking" of coverage and held that the policy did not meet the reasonable expectations of the insured. *Glidden* is not applicable here because the provisions relied upon in that decision deal with the "stacking" of coverages between different insurers, a so-called "other insurance" clause. Unlike *Glidden*, in the case at hand the provisions limiting liability specifically refer to limitations in the event of multiple policies issued by the *same* insurer.

■ Finally, plaintiff contends that the specific language used to prevent "stacking" of medical coverage printed at the bottom of the declaration sheet indicates that the insurer had knowledge that without this language, the coverage for passenger injury would be ambiguous. The provision in question reads, "Passenger accident coverage written on more than one vehicle does not increase the stated limit per person." Plaintiff contends that defendant knew the language in the limits of liability clause was ambiguous and attempted to rectify this situation relative to "passenger accident coverage." Once again, we need only look to theories of the parties' knowledge and intent when the language of the policy is ambiguous. The existence of any such subjective intent is rebutted by the clear and unambiguous language of the policy. (*Menke*, 78 Ill. 2d at 425, 409 N.E.2d at 542.) As we see no material issue of fact, the motion for summary judgment is affirmed.

Affirmed.

McCULLOUGH and COOK, JJ., concur.