MARY A. HALL, Adm'r of the Estate of Howard E. Hall, *et al.*, Plaintiffs-Appellants, v. LISA A. BURGER *et al.*, Defendants-Appellees.

Fourth District   No. 4—95—0195

Argued October 18, 1995.—Opinion filed January 31, 1996.—Rehearing denied February 28, 1996.

Richard H. Balog (argued), of St. Charles, and Thomas E. Doyle (argued), of Taylorville, for appellants.

Evan H. Johnson and Michael A. Walsh (argued), both of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, Ltd., of Decatur, for appellees Country Mutual Insurance Company and Country Casualty Insurance Company.

Howard W. Small and Bianca I. Truitt (argued), both of Thomas, Mamer & Haughey, of Champaign, for appellee Larry D. Medaris.

JUSTICE GARMAN delivered the opinion of the court:

Plaintiffs appeal the trial court's grant of summary judgment for their insurance company and insurance agent. We affirm in part, reverse in part, and dismiss in part.

Howard Hall (decedent) died in a car accident in August 1988. He was hit by a car driven by Lisa Burger, belonging to Robert Hedrick. Mary Hall (claimant), decedent's widow and administrator of his estate, settled with both defendants for maximum limits on their policies, $50,000 and $25,000, respectively. The Halls had four separate insurance policies with Country Mutual Insurance Company (insurer), each of which contained underinsured motorist (UDIM) coverage. Two of the policies about which there is no dispute had such coverage with a $100,000-per-person limit of liability, and one (the one for the vehicle decedent was driving at the time of the accident) had a limit of $50,000 per person. The disputed policy had a $100,000-per-person limit.

Each policy contained the following identical provision, a section titled "AGREEMENT" on the first page of the "UNDERINSURED MOTORISTS INSURANCE ENDORSEMENT":

"If you have paid for this coverage (see the declarations page), we will pay damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured and caused by an accident. The owner's or operator's liability for these damages must arise from the ownership, maintenance, or use of the underinsured motor vehicle.

The limits of liability for this coverage will be reduced by those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the underinsured motor vehicle."

Each also contained the following "antistacking" clause:

"7. Other Vehicle Insurance in the Company. If this policy and any other vehicle insurance policy issued to you by this Company apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy."

And the per-person limits of liability section in each policy stated:

"2. Limits of Liability. The Underinsured Motorists limits of liability shown on the declarations page for Uninsured Motorists, Coverage U apply as follows:

a. The limit of liability for 'each person' is the maximum amount we will pay for bodily injury sustained by one person in any one accident. That maximum amount includes any claims of other persons for damages arising out of that bodily

injury. The figure listed is the most we will pay for any one person in any one accident regardless of the number of insureds, claims made, insured vehicles, premiums shown on the declarations page, or underinsured motor vehicles."

Cross-motions for summary judgment came before the court in February 1995. The insurer had already paid claimant $25,000, which it claimed was all it owed. This amount was arrived at by subtracting $75,000, the amount recovered from both defendants' settlements, from $100,000, the highest limit of liability on any one of claimant's insurance policies. The trial court granted the insurer's motion, holding it owed no more than this amount and it was not liable for bad-faith attempt to settle. The trial court had earlier held that the insurer should be allowed to offset the full $75,000 recovered from tortfeasors. The parties stipulated that plaintiffs' damages exceed $200,000.

Plaintiffs claim that each of the above policy provisions is ambiguous. They claim error in the summary judgment because ambiguity is to be construed in favor of the insured. They claim further that important public policy mandates an outcome in their favor, both in terms of the maximum amount recoverable and in terms of what the insurer should be allowed to set off. As a further count with respect to the insurer, they claim it was error for the trial court not to award them damages for the insurer's "bad-faith attempt to settle."

Plaintiffs also sued Larry Medaris, the insurance agent who sold the Halls the policies in question. The first claim, unrelated to the above allegations with respect to the policies, is that Medaris breached a duty to the plaintiffs by failing to obtain death benefits coverage they had requested on the truck being driven when the accident occurred. Medaris obtained summary judgment on this claim in February 1995, at the same time as the insurer. The second claim against him alleged a violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/2 (West 1992)), by his having broken a promise to provide "full" UDIM coverage. This claim was dismissed in October 1991 for failure to state a claim upon which relief could be granted. On appeal claimant also contends Medaris "made a false representation as to the value of the coverage since it possessed no value" if some of the UDIM coverage is of no value (*i.e.*, cannot be stacked).

## I. ANALYSIS

A court properly grants summary judgment when the pleadings, depositions, and affidavits show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Wright v. St. John's Hospital of*

*the Hospital Sisters of the Third Order of St. Francis* (1992), 229 Ill. App. 3d 680, 682-83, 593 N.E.2d 1070, 1072.) The standard of review is *de novo. Wright*, 229 Ill. App. 3d at 683, 593 N.E.2d at 1072.

In construing a summary judgment motion, the trial court must view all evidence in a light most favorable to the nonmovant. (*Gilbert v. Sycamore Municipal Hospital* (1993), 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792.) On defendant's motion for summary judgment, plaintiff need not establish his case as he would at trial. However, he must present some factual basis which would arguably entitle him to judgment. (*West v. Deere & Co.* (1991), 145 Ill. 2d 177, 182, 582 N.E.2d 685, 687; *Northrop v. Lopatka* (1993), 242 Ill. App. 3d 1, 4, 610 N.E.2d 806, 809.) If the movant supplies facts which if uncontradicted would entitle the party to judgment as a matter of law, the opponent cannot rely solely on his pleadings to raise issues of material fact. Thus, uncontradicted facts contained in the movant's affidavit are admitted and must be taken as true for purposes of the motion. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240-41, 489 N.E.2d 867, 871-72.) However, the party opposing the motion need not file any counteraffidavits to create a material question of fact unless the movant presents evidence which precludes any possible liability. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 604-05, 456 N.E.2d 958, 961-62.

## A. *Insurance Company*

■ When a provision in an insurance policy is ambiguous or is susceptible of at least two reasonable interpretations, it should be construed in favor of the insured. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 180, 370 N.E.2d 1044, 1049; *Bailey v. Auto-Owners Insurance Co.* (1992), 229 Ill. App. 3d 514, 516, 592 N.E.2d 1133, 1134; *Gibbs v. Madison Mutual Insurance Co.* (1993), 242 Ill. App. 3d 147, 153, 610 N.E.2d 143, 148, *appeal denied* (1993), 151 Ill. 2d 563, 616 N.E.2d 333.) Provisions should be read in context, however, not in isolation. (See *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250.) Courts should not distort language to reach a desired result. (See *Illinois Farmers Insurance Co. v. Tabor* (1994), 267 Ill. App. 3d 245, 251-52, 642 N.E.2d 159, 163.) When a clause is unambiguous it should be applied as written, unless it contravenes public policy. *Bailey*, 229 Ill. App. 3d at 516, 592 N.E.2d at 1134-35.

## 1. Limit of Liability

Decedent had four insurance policies with insurer, each of which contained UDIM coverage. Plaintiffs argue first that the antistacking clause (identical in each policy) is ambiguous, and therefore all of the policies should be stacked, with a resulting limit of liability of

$350,000. In the alternative, they argue the limit should at least be $200,000, because there are two distinct tortfeasors, which creates a latent ambiguity since the "agreement" section refers to the "owner's *or* operator's liability." (Emphasis added.) Finally, plaintiffs argue that even if we find the provisions unambiguous one of the above conclusions should be reached because of public policy.

■ The antistacking clause in question states: "If this policy and any other vehicle insurance policy issued to you by this Company apply to the same *accident*, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy." (Emphasis added.) This exact phrase has been found unambiguous by the Supreme Court of Illinois. (*Bruder v. Country Mutual Insurance Co.* (1993), 156 Ill. 2d 179, 186, 620 N.E.2d 355, 359.) We see no reason for a different conclusion here. The clause specifically refers to a situation where multiple policies issued by Country Companies apply to the same accident. There is no question in this case that all of claimant's damages arose from the same accident. The clause does not carve out any exceptions for accidents in which multiple tortfeasors are involved or in which tortfeasors are sued under different theories of liability.

Nor does public policy prevent application of the clause to UDIM coverage. (*Grzeszczak v. Illinois Farmers Insurance Co.* (1995), 168 Ill. 2d 216, 229.) The legislature has specifically allowed application of antistacking clauses to UDIM coverage in section 143a—2(5) of the Illinois Insurance Code (Code) (215 ILCS 5/143a—2(5) (West 1992)), which reads in relevant part:

> "(5) Scope. Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." 215 ILCS 5/143a—2(5) (West 1992).

Nor will we override the clear result because separate premiums have been paid for the separate policies. The "premium rule" is the name given to a rule of construction that separate premiums indicate separate coverage. It does not apply unless the contract provision is ambiguous. (*Grzeszczak*, 168 Ill. 2d at 229; *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 425, 401 N.E.2d 539, 542.) As the provision in this case is not ambiguous, the premium rule does not affect the result.

Finally, any potential ambiguity in the "agreement" section's reference to the "owner's *or* operator's liability" (emphasis added) is irrelevant because the antistacking provision states that the limit of liability will be no more than the highest applicable limit if more than one policy applies to the same *accident*. Even if one policy applied to the owner and another to the operator, they would both apply to the same accident and thus the antistacking provision would still limit the insurer's maximum liability to $100,000.

## 2. Offset

■ The limits of liability section of the insurance policy says the limit of liability for each person is the maximum amount the insurer will pay "for any one person in any one accident regardless of the number of insureds, claims made, insured vehicles, premiums shown on the declarations page, or underinsured motor vehicles." Burger, the driver, had $50,000 worth of insurance, and Hedrick, the owner, had $25,000 worth of insurance. The question here is whether the insurer should be allowed to deduct the amounts paid by *both* underinsured tortfeasors, as the trial court held. We conclude the insurer should not be allowed such a deduction, based on both the language of the insurance policy and public policy, and therefore reverse the double offset.

The relevant policy language reads: "The limits of liability for this coverage will be reduced by those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the underinsured motor vehicle." Burger's policy covered her personally and applied to the vehicle she drove. However, the phrase "maintained on the underinsured motor vehicle" can reasonably be construed to modify not only "other security" but also "applicable bodily injury insurance policies" and "bonds." As noted above, when a policy is susceptible of multiple interpretations it is to be construed in favor of the insured. (*Squire*, 69 Ill. 2d at 180, 370 N.E.2d at 1049.) As Burger's policy was not maintained "on" the vehicle, it is not embraced by the above language, and thus the amount recovered under it will not be subtracted from the limits of liability.

Further, and more importantly, even if the language of this insurance policy clearly and unambiguously allowed offset of all amounts recovered under all tortfeasors' insurance policies, we hold such a result would be against public policy, and the clause could not be given effect as written.

In *Hoglund v. State Farm Mutual Automobile Insurance Co.* (1992), 148 Ill. 2d 272, 592 N.E.2d 1031, the supreme court was faced

with the situation of a plaintiff with *uninsured* motorist (UIM) coverage who was injured by two tortfeasors, one of whom was fully insured and one of whom was totally uninsured (not just, as in this case, underinsured). (*Hoglund*, 148 Ill. 2d at 274, 592 N.E.2d at 1032.) The insurer attempted to use the payment claimant received from the insured tortfeasor to offset its obligation to claimant under the UIM policy, and thus claimed it owed nothing to its insured. (*Hoglund*, 148 Ill. 2d at 277-78, 592 N.E.2d at 1034.) The court did not allow this result. (*Hoglund*, 148 Ill. 2d at 280-81, 592 N.E.2d at 1035.) The court acknowledged that if its analysis were confined to the language of the policy, the insurer would win. (*Hoglund*, 148 Ill. 2d at 278, 592 N.E.2d at 1034.) However, it refused to so limit itself and went on to hold that the policy language had to be "read in conjunction with the policyholder's reasonable expectations[,] *** the public policy behind the [UIM] statute and the coverage intended by the insurance policy itself" and "with reference to the facts of the case at hand." (*Hoglund*, 148 Ill. 2d at 279, 592 N.E.2d at 1034.) When the court did so, it found "latent ambiguity" in the policy language. *Hoglund*, 148 Ill. 2d at 279, 592 N.E.2d at 1034.

The court in *King v. Allstate Insurance Co.* (1994), 269 Ill. App. 3d 190, 645 N.E.2d 503, extended *Hoglund* to the situation where the second tortfeasor was merely *underinsured*. (*King*, 269 Ill. App. 3d at 194, 645 N.E.2d at 506; see also *Gibbs*, 242 Ill. App. 3d at 153-57, 610 N.E.2d at 148-50 (in multiple-tortfeasor case, insurer not allowed to set off amounts it paid under bodily injury liability section of driver's policy against amounts owed under UDIM section of same policy).) In *King*, as in *Hoglund*, the plaintiff-claimant was injured by two tortfeasors. (*King*, 269 Ill. App. 3d at 190, 645 N.E.2d at 504.) Unlike *Hoglund*, both tortfeasors had some insurance: one motorist had $100,000 of coverage (fully covered), the other had $20,000 (underinsured). (*King*, 269 Ill. App. 3d at 190, 645 N.E.2d at 504.) Claimant had $50,000 in UDIM coverage. (*King*, 269 Ill. App. 3d at 191, 645 N.E.2d at 504.) The court held claimant could recover up to $30,000 from his UDIM coverage ($50,000 policy minus $20,000 of underinsured tortfeasor's insurance), but only to the extent that his injuries exceeded $120,000. *King*, 269 Ill. App. 3d at 195, 645 N.E.2d at 507.

Insurer attempts to distinguish the case at bar from *King* and *Hoglund* because those cases involved two tortfeasors in separate vehicles, whereas here both of the tortfeasors' liability arises from a single vehicle. We find this distinction irrelevant to the issues before us, especially in light of the limits of liability section in the policy at bar, which states that it applies "regardless of the number of *** underinsured motor vehicles." The policy issues articulated in *Hoglund*

and *King* do not vanish when the second tortfeasor is a negligent owner, rather than a negligent driver. The insurer notes correctly that the *King* court specifically distinguished cases involving one at-fault driver (*King*, 269 Ill. App. 3d at 194, 645 N.E.2d at 506), but we believe the court intended to distinguish between cases involving one and more than one *tortfeasor*. (See the three cases cited by *King* on this point: *Banes v. Western States Insurance Co.* (1993), 247 Ill. App. 3d 480, 484-85, 616 N.E.2d 1021, 1025 ("Since there is only one tort-feasor here, there is no latent ambiguity in the policy"); *Marroquin v. Auto-Owners Insurance Co.* (1993), 245 Ill. App. 3d 406, 408, 614 N.E.2d 528, 530 (noting the "latent ambiguity" in *Hoglund* "was based upon the fact there were two tortfeasors involved"); *Obenland v. Economy Fire & Casualty Co.* (1992), 234 Ill. App. 3d 99, 110, 599 N.E.2d 999, 1005 (distinguishing *Hoglund* as involving more than one "motorist").) If the *King* court did intend a distinction between multiple- and single-vehicle situations, we disagree with that portion of its analysis.

Nor does public policy change when both tortfeasors are underin-sured (instead of one tortfeasor being fully insured and one not, as in *Hoglund* and *King*). Indeed, the policy issues favor the plaintiff all the more in this situation.

The purpose of UDIM coverage is to put the insured in the same position as if injured by a motorist with insurance in the same amount as the UDIM policy. (*King*, 269 Ill. App. 3d at 194, 645 N.E.2d at 506, citing *Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548, 591 N.E.2d 427; *Gibbs*, 242 Ill. App. 3d at 154, 610 N.E.2d at 148, citing *Sulser*, 147 Ill. 2d 548, 591 N.E.2d 427; but see discussion of *Sulser* and *Hoglund* below.) If both tortfeasors in this case had $100,000 of insurance, plaintiffs would get $200,000. As it happens, plaintiffs only recovered a total of $75,000 from them. Plaintiffs can-not be put in as good a situation as if both tortfeasors were fully insured because of the antistacking provision, which makes the insurer's limit of liability $100,000. To allow a double offset, however, would limit her *total* recovery to $100,000. Even if this were permis-sible under the language of the insurance policy, it would violate the public policy of putting the claimant in as good a position as if all tortfeasors were fully insured.

It would create a terrible inconsistency to allow a double offset here. If the driver were fully insured, plaintiffs would get $100,000 from her, $25,000 from the owner, and, under *King*, would then get $75,000 from the insurer ($100,000 policy minus $25,000 from owner) because it would violate public policy to allow offset of the $100,000. Plaintiffs' net recovery would thus be $200,000. If we allowed the

double offset here, plaintiffs would not only receive $50,000 less than in the above hypothetical from the driver's policy, they would also receive $50,000 less from their UDIM policy because their insurer would be allowed to offset the $50,000 they were able to recoup from the driver. This would not make sense.

We note, as an aside, that this result puts the UDIM insurer in no worse a position than if its insured had been injured by a single underinsured tortfeasor. We see no reason to allow the insurer a "windfall" when its insured is hurt by more than one underinsured tortfeasor—so long as, of course, the amount the insured recovers does not exceed his or her damages. See *Glidden*, 57 Ill. 2d at 336-37, 312 N.E.2d at 250-51.

The insurer asserts that *Tabor* supports its construction of the offset provision. *Tabor* held that a vehicle was not "underinsured" under the Code when claimant had $250,000 of UDIM coverage and the vehicle had a total of $400,000 in liability insurance, despite the fact that claimant only recovered $200,000 because there were two victims. (*Tabor*, 267 Ill. App. 3d at 249-50, 642 N.E.2d at 161-62.) The insurer contends we should follow this process of adding together all policies involved; we disagree.

*Tabor* differs from this case in important respects. First, it involved one tortfeasor and multiple claimants (*Tabor*, 267 Ill. App. 3d at 246, 642 N.E.2d at 160), whereas the instant case involves one claimant and multiple tortfeasors, as in *King* and *Hoglund*. Second, it involved interpretation of a statute, not an insurance policy (*Tabor*, 267 Ill. App. 3d at 247, 642 N.E.2d at 160), and thus public policy could not override clear language. Finally and most importantly, *Tabor* decided a different issue altogether. Not only was *Tabor* not a case involving setoffs, the *Tabor* court explicitly refused even to consider the setoff provision of the statute in its analysis. (*Tabor*, 267 Ill. App. 3d at 249-50, 642 N.E.2d at 161-62, citing *Moriconi v. Sentry Insurance of Illinois, Inc.* (1990), 193 Ill. App. 3d 904, 550 N.E.2d 637.) *Tabor* is not relevant to the issue at hand.

*Sulser* also contains some language which supports the insurer's position. *Sulser* first stated that the statutory provisions for UDIM and UIM coverage should be construed *in pari materia*, and concluded the purpose of UDIM coverage was the same as that for UIM coverage, "*i.e.*, to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." (*Sulser*, 147 Ill. 2d at 555, 591 N.E.2d at 429.) The court went on, however, to characterize UDIM coverage as designed to " 'fill the gap' between the claim and the tortfeasor's insurance" (*Sulser*, 147 Ill. 2d at 556, 591 N.E.2d at 430), and said "the policyholder is not necessarily as-

sured of receiving the total [amount of UDIM coverage] from the insurer, but only of receiving that portion of the [UDIM coverage] which is not recovered from third parties." (*Sulser*, 147 Ill. 2d at 556, 591 N.E.2d at 430.) Thus, "[w]hen the insured opts for $100,000 in coverage against either [UIM] or [UDIM] risks, he is assured of receiving no more than that amount." (*Sulser*, 147 Ill. 2d at 557, 591 N.E.2d at 430.) Finally, the court labelled "absurd" any construction whereby claimant would receive greater or lesser benefits due to the "fortuitous event of being injured by an underinsured rather than by an uninsured motorist." *Sulser*, 147 Ill. 2d at 557, 591 N.E.2d at 430.

Clearly there is a tension between the two concepts of UDIM coverage—coverage intended to put the person in the same position as if the tortfeasor carried adequate insurance versus a "gap-filler" which guarantees plaintiffs the amount of their UDIM coverage but no more. This tension becomes most apparent in multiple-tortfeasor actions. We adopt the first construction, that UDIM coverage is intended to put the insured in the same position as if the tortfeasor carried adequate insurance. *Sulser*, which mentions both concepts, never mentioned the possibility of a conflict between them. This is unsurprising, as *Sulser* dealt not with setoff of proceeds from tortfeasors' insurance but rather with setoff of workers' compensation benefits. (*Sulser*, 147 Ill. 2d at 551, 591 N.E.2d at 427.) *Hoglund* specifically dealt with setoff of settlements received from multiple tortfeasors and it was handed down after *Sulser* (March 26, 1992, versus February 20, 1992; later, rehearing was denied on *Hoglund* on June 1, 1992), both of which facts give it priority in our analysis. *Hoglund* clearly follows the "as if all had adequate insurance" policy, and not the *Sulser* alternate "this much but no more." It is appropriate to compare them despite the fact that *Hoglund* dealt with UIM coverage and *Sulser* with UDIM coverage because, as *Sulser* points out, the same result should obtain in the two contexts. The *Hoglund* interpretation has the weight of more precedent behind it than does *Sulser* (compare *Hoglund*, 148 Ill. 2d at 279-80, 592 N.E.2d at 1035, with *Sulser*, 147 Ill. 2d at 556-58, 591 N.E.2d at 430-31), and it simply makes more sense. There is no question of "double recovery"—recovery under UIM or UDIM coverage will be to the extent of claimant's damages at the most. And rules of construction of insurance contracts generally imply that as between the insurance company, which has been receiving the premiums it set, and the claimant, who is trying to get compensation for his injuries, it is appropriate to favor the claimant.

We reverse the trial court's determination that the double setoff is appropriate, based on both the language of the insurance policy and public policy.

## 3. Unreasonable and Vexatious Refusal to Settle the Claim

The material in this section is not to be published pursuant to Supreme Court Rule 23. Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994.

## B. *Insurance Agent*

As noted above, on defendant's motion for summary judgment, a plaintiff must present some factual basis which would arguably entitle him to judgment. (*West,* 145 Ill. 2d at 182, 582 N.E.2d at 687; *Northrop,* 242 Ill. App. 3d at 4, 610 N.E.2d at 809.) He cannot rely solely on his pleadings to raise issues of material fact if the moving party presents evidence which precludes any possible liability. (*Motz,* 119 Ill. App. 3d at 604-05, 456 N.E.2d at 961-62.) Uncontradicted facts contained in the movant's affidavit are admitted and must be taken as true for purposes of the motion. *Purtill,* 111 Ill. 2d at 241, 489 N.E.2d at 871-72.

## 1. Breach of Fiduciary Duty

■ On this count the court granted summary judgment because no witness had actual knowledge of whether the decedent had requested the inclusion of death benefits in the insurance on the truck decedent was driving at the time of the accident. Medaris was precluded from testifying with respect thereto because of the Dead-Man's Act (735 ILCS 5/8—201 (West 1992)). Plaintiffs' response to the motion for summary judgment did not allege any facts which would have given rise to a cause of action; rather, it alleged "That the Plaintiff intends to prove at trial by exigent [*sic*] evidence the existence of the Agreement by and between the deceased and Mr. Medaris," and averred that there was a factual basis to be found in documents under Medaris' control.

From examination of the record, including plaintiffs' briefs on appeal, it appears the only facts plaintiffs could set forth in opposition to summary judgment are as follows: (1) there was death benefit coverage on the three other automobiles for which Medaris had sold plaintiff insurance; and (2) death benefit coverage was inexpensive ($1 for $5,000 of coverage). Claimant did not request the coverage nor did she hear decedent do so; in addition, she signed the application, in which the "death benefits" block was blank and no premium was listed for it. In granting summary judgment on this issue, the trial court said a finding that there was a contract for death benefit insurance on the vehicle in question on the basis of these facts "would only amount to pure conjecture and speculation and not, at least in the Court's opinion, a reasonable inference that the jury could logically draw." We agree.

An issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358, 543 N.E.2d 1304, 1308.) The trial court here found an inference necessary for claimant to succeed (*e.g.*, decedent had requested death benefit coverage) could not reasonably be drawn from the facts presented. Note the question is not one of the parties' intents (which would make summary judgment particularly inappropriate) (see *Giannetti v. Angiuli* (1994), 263 Ill. App. 3d 305, 313, 635 N.E.2d 1083, 1089; *In re Estate of Ciesiolkiewicz* (1993), 243 Ill. App. 3d 506, 510-11, 611 N.E.2d 1278, 1282), but whether Medaris was actually instructed to purchase the death benefit coverage. What was in decedent's mind is irrelevant: plaintiffs could only prevail if they were able to establish decedent *actually instructed Medaris to purchase the insurance and Medaris nevertheless did not do so.* The trial court ruled the first of these propositions could not reasonably be inferred from the facts claimant would be able to set forth, and we agree.

### 2. Claim Under the Act

The material in this section is not to be published pursuant to Supreme Court Rule 23.

### II. CONCLUSION

We affirm the trial court's conclusion that the antistacking clauses limit the insurer's liability to $100,000. We also agree that the insurer did not act in bad faith. We reverse, however, the conclusion that the insurer is entitled to offset the amounts received from both underinsured motorists, because of the language of the policy in question and because to allow the double offset would contravene the purpose behind UDIM coverage, which is to put the insured in as good a position as if tortfeasors were adequately insured.

We further affirm the grant of summary judgment to Medaris on count IX, and dismiss Hall's appeal from the dismissal of count X for want of jurisdiction.

Affirmed in part; reversed in part and remanded; and dismissed in part.

STEIGMANN and KNECHT, JJ., concur.